Marc Y. Lazo SBN: 215998
2105 Foothill Blvd., Suite B121
La Verne, CA 91750
Phone No.: (855) 471-1110
Fax No.: (855) 471-1110
marclazo@cox.net

*Attorneys for Plaintiffs and
the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHRAM SODEIFI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual,<br><br>Defendants. | Civil Action No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL AND SECURITIES LAWS |

Plaintiff Shahram Sodeifi ("Plaintiff") individually and on behalf of all other persons similarly situated, brings this class action against Defendant Tesla, Inc. ("Tesla" or the "Company") and Defendant Elon R. Musk ("Musk")(collectively "DEFENDANTS")based upon knowledge, relevant documents and information and belief, alleging as follows:

///

///

///

///

**NATURE OF THIS ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons, other than DEFENDANTS, who purchased or sold securities of Tesla between August 7, 2018 and August 10, 2018 (the "Class Period") and suffered financial damages as a result of the statements and omissions alleged herein. Plaintiff seeks to recover compensable damages caused by DEFENDANTS' violation of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Tesla, Inc., formerly known as Tesla Motors, Inc. was founded in 2003. It is headquartered in Palo Alto, California andit specializes in electric vehicles, lithium-ion battery energy storage and solar panel manufacturing. Its stock trades on the NASDAQ Global Select Market under the symbol "TSLA."

3.      On August 7, 2018, Defendant Musk stated the following on his personal Twitter:(1) "Am considering taking Tesla private at $420. Funding secured;" (2) "Shareholders could either to sell at 420 or hold shares & go private;" (3) "Investor support is confirmed."

4.      Additionally, on August 7, 2018, Defendant Tesla stated on its Twitter account: "Taking Tesla Private."

5.      As a result of these statements made on Twitter, the common stock rose $37.58, almost 11% higher than the previous closing price of $341.99 on August 6, 2018, to close at $379.57 per share on August 7, 2018.

6.      On August 8, 2018, members of Tesla's Board of Directors issued a statement revealing that the board was still evaluating the prospects of taking Tesla private, and confirmed that such a deal was subject to board approval. Further, the Securities Exchange Commission ("SEC") began investigating the truth of Musk's statements about the prospects of taking Tesla private.

///

7.     On August 9, 2018, after it was reported that the Board of Directors of Tesla was still investigating the funding that was allegedly secured, Tesla's common stock dropped $17.89 per share, or 4.83% from the previous day's closing price, to close at $352.45 per share.

8.     As a result of DEFENDANTS' wrongful acts and omissions, and the increase and decrease in the market value of the Tesla's common shares, Plaintiff and other class members who purchased or sold securities of Tesla have suffered significant losses and damages.

## PARTIES

### A. PLAINTIFF

9.     Plaintiff Shahram Sodeifi is a citizen of California, who resides in Phoenix, Arizona. During the Class Period, Plaintiff purchased shares of Tesla stock. In purchasing such shares, Plaintiff was damaged as a result of the false and misleading statements issued by Defendant Musk.

10.     Plaintiff is informed and believes that most class members reside in the State of California.

### B. DEFENDANTS

11.     Defendant Tesla, Inc. is a Delaware corporation, with its principal place of business located at 3500 Deer Creek Road, Palo Alto, California 94070. Tesla's common stock trades on the NASDAQ under "TSLA."

12.     Defendant Musk co-founded Tesla, Inc. and at all relevant times has served asthe Company's Chief Executive Officer ("CEO") and Chairman.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over the subject matter of this action pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and under Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

///

14.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

15.    Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

16.    Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within the district.

17.    <u>In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.</u>

## FACTUAL BACKGROUND

18.    On August 7, 2018, Musk on his public, personal twitter account, put out several messages regarding Tesla, Inc.

19.    Musk tweeted the following messages:

    a. Musk's 9:48 a.m. tweet: "Am considering taking Tesla private at $420. Funding secured."

    b. Musk's 11:13 a.m. tweet: "Shareholders could either to sell at 420 or hold shares & go private."

    c. Musk's 12:36 p.m. tweet: "Investor support is confirmed."

20.    Tesla, Inc., on its twitter account, also tweet a blog post at 12:28 p.m. stating, "Taking Tesla Private."

21.    Musk's tweet drove the price of Tesla, Inc. shares as much as $45.47 above the previous day's closing price.

///

///

22.    On August 8, 2018 members of Tesla's board of directors issued a statement that the board was still evaluating the prospect of taking Tesla private and that such a decision was still subject to board approval.

23.    Shortly after the statements by the board of directors, the Tesla common stock fell $9.23 per share from the previous day's closing price.

24.    That same day, *The Wall Street Journal* reported that the SEC had asked Tesla about Musk's announcement from August 7, 2018, and that Musk "could be in trouble if regulators develop evidence that he made a statement aimed at goosing his company's stock price."

25.    *Barron's* also reported on August 7, 2018 that "[t]he surge in Tesla's shares after Musk's tweet about going private has had huge, salutary effect on its key convertible bonds and its financing position. By pushing the common stock's price above the $360 level, his tweet has put a $900 million convert issue above its conversion price, which would effectively let the electric-auto maker pay off that obligation in stock instead of cash."

26.    On August 9, 2018, *Reuters* reported that Tesla's board of directors was investigating whether funding was in fact "secured."  As a result, the price of Tesla's common stock dropped $17.89 per share from the previous day's closing price.

27.    On August 13, 2018, Musk posted a statement on Tesla's blog confirming that funding for a deal to take Tesla was not yet secured. However, it was proceeding on a deal with Saudi Arabia's sovereign wealth fund for funding, which was "subject to financial and other due diligence and their internal review process for obtaining approvals."

28.    That same day, Musk tweeted at 6:02 p.m., "I'm excited to work with Silver Lake and Goldman Sachs as Financial Advisors, plus Wachtell, Lipton, Rosen & Katz, and Munger, Tolles, & Olson as legal advisors, on the proposal to take Tesla Private."

///

29.     On August 14, 2018, *Bloomberg* reported that neither Goldman Sachs nor Silver Lake were working with Musk in official capacity. As a result of this news, the Tesla common stock dropped $8.77 per share from a previous closing price of $356.41.

30.     On August 15, 2018 the *Wall Street Journal* reported that the SEC had formally subpoenaed Tesla and was seeking information from each of the Company's directors.

31.     As a result of DEFENDANTS disclosures and false misrepresentations, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action individually and as a class action on behalf of the following Class: All persons who purchased or sold Tesla securities during the Class Period (the "Class") and were damaged by DEFENDANTS' statements and/or omissions as alleged herein.

33.     Excluded from the Class are DEFENDANTS herein, the officers and directors of Tesla, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns any entity in which DEFENDANTS have or had a controlling interest.

34.     This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

35.     The Class is so numerous that the individual joinder of all of its members is impracticable. The exact number and identities of members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery. Record owners and other members of the Class may be identified from records maintained by Tesla or its transfer agent and may be notified of the pendency of this

action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by DEFENDANTS' wrongful conduct in violation of federal securities law that is complained of herein.

37.    Plaintiff will fairly and adequately represent and protect the interest of the Class. Plaintiff has retained competent and experienced counsel in class and securities litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class. Further, Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited, the following:

> a. whether DEFENDANTS' actions violated federal securities laws, as alleged herein;
> b. whether DEFENDANTS' misrepresented material facts about the financial condition, business, operations, and management of Tesla to the investing public;
> c. whether DEFENDANTS' acted knowingly or recklessly when issuing the misleading financial statements;
> d. whether Musk's statements cause Tesla to issue false or misleading statements during the Class Period;
> e. whether the common stock prices of Tesla securities during the Class Period wereartificially inflated and depressed because of DEFENDANTS' statements, as alleged herein; and
> f. whether the members of the Class sustained damages as a result of DEFENDANTS' acts;

39.    A Class Action is superior to other available means for the fair and efficient adjudication of the claims of the Class. Each individual Class member may

lack the resources to undergo the burden and expense associated with individually prosecuting the expensive and extensive litigation necessary to establish DEFENDANTS' liability and obtain adequate compensation for the injuries sustained. Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling legal and factual issues present in this case. Class treatment of the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

40.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- The omissions and misrepresentations were material;
- Tesla securities are traded in efficient markets;
- the Compan's securities were liquid and traded with moderate to heavy volume during the Class Period;
- the Company's securities traded on the NASDAQ and other exchanges, and the Company was covered by multiple analysts;
- the misreprsentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Tesla securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of theomitted or misrepresented facts.

41.    Based on the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States,* 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty ot disclose such information, as detailed herein.

## NO SAFE HARBOR

43.    The statutory safe harbor provided for certain forward-looking statements does not apply to any of the false statements alleged in this Complaint. None of the statements alleged herein are "forward-looking" statements, and no such statement was identified as a "forward-looking statement" when made. Rather, all the false and misleading statements alleged herein relate to facts and conditions existing at the time the statements were made. Moreover, cautionary statements, if any, did not identify important factors that could cause actual results to differ materially from those in any forward-looking statements.

44.    In the alternative, to the extent that the statutory safe harbor does not apply to any statement pleaded herein which is deemed to be forward-looking, the DEFENDANTS are liable for such forward-looking statements because at the time each such statement was made, the speaker actually knew and/or recklessly disregarded the fact that such forward-looking statements were materially false or misleading and/or omitted facts necessary to make statements previously made not materially false and misleading, and/or that such statement was authorized and/or approved by a director and/or executive officer at Tesla who actually knew or recklessly disregard the fact that each such statement was false and/or misleading when made.

## COUNT I

### Violation of Section 10(B) Of The Exchange Act and Rule 10b-5 for Artificial Inflation and Depression of Tesla Securities

### (Against All Defendants)

45.    Plaintiff incorporates by reference each and every allegation contained throughout this Complaint as though fully set forth herein.

46.    During the Class Period, DEFENDANTS carried out a plan, scheme, and course of conduct which was intended to and, through the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged

-9-

herein; and (2) caused Plaintiff and other members of the Class to purchase Tesla's common stock at artificially inflated or depressed prices. In furtherance of this unlawful scheme, plan, and course of conduct, DEFENDANTS, and each of them, took the actions set forth herein.

47.     During the Class Period, DEFENDANTS employed devices, schemes, and artifices to defraud; made untrue statements of material fact/and or omitted to state material facts necessary to make the statements not misleading; and engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market price of Tesla's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

48.     DEFENDANTS, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about having funding secured to take Tesla private at $420.00 per shares and having investor support confirmed.

49.     DEFENDANTS employed devices, schemes, and other artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to falsely persuade purchasers and sellers of Tesla securities that funding is "secured" and "[i]investor support is confirmed."

50.     DEFENDANTS had actual knowledge of the misrepresentations and omission of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.DEFENDANTS material misrepresentations and/or omissions were done knowingly or reckless and for the purpose and effect of concealing Tesla's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.

51.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Tesla's common stock was artificially inflated during the Class Period. Plaintiff and other members of the Class acquired common stock during the Class Period at artificially high prices and were damaged as a result.

52.    By virtue of the foregoing, DEFENDANTS have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of DEFENDANTS' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respectivepurchases and sales of the Company's artificially inflated stock during the Class Period.

## COUNT II

### Violation of Section 10(B) Of The Exchange Act and Rule 10b-5 for Artificial Inflation and Depression of Tesla Securities

### (Against All Defendants)

54.    Plaintiff incorporates by reference each and every allegation contained throughout this Complaint as though fully set forth herein.

55.    During the Class Period, DEFENDANTS deceived the investing public, including Plaintiff and the other Class members and caused Plaintiff and the other Class members to purchase Tesla's common stock at artificially inflated prices.

56.    DEFENDANTS, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in manipulative acts that drove the price of Tesla shares to artificially high levels during the Class Period.

57.    DEFENDANTS had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth when they failed to ascertain and to disclose such facts, even though such facts were available to them. DEFENDANTS knew that investors had not been secured, but

sealed such information from the investing public for the purpose of manipulating the price of Tesla securities.

58.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Tesla's common stock was artificially inflated during the Class Period.

59.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believe them to be true. Had Plaintiff and the other members of the Class known the truth about Tesla's statements, which were not disclosed by DEFENDANTS, Plaintiff and the other members of the Class would not have purchased or otherwise acquired their Tesla common stock, or, if they had acquired such common stock during the Class period, they would not have done so at the artificially inflated prices that they paid. DEFENDANT'S market manipulation caused Plaintiff's losses.

60.    By virtue of the foregoing, DEFENDANTS have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

61.    As a direct and proximate result of DEFENDANTS' wrongful conduct, Plaintiff and the Class suffered damages in connection with their trades of Tesla securities during the Class Period.

### COUNT III

### Violation of Section 20(a) of the Exchange Act

### (Against Defendant Musk)

62.    Plaintiff incorporates by reference each and every allegation contained throughout this Complaint as though fully set forth herein.

63.    Musk acted as controlling person of Tesla within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position, agency, and ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the financial statements published by the Company and disseminated to the investing public, Musk had the

power to influence and control, and did influence and control, directly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends, are false and misleading. Musk had access to non-public information regarding the Company's consideration of any going private transactions, the price, and whether such funding was secured.

64. Musk as an officer and director of Tesla, is presumed to have the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65. As set forth above, Musk violated Section 10(b) and Rule 10b-5 by his acts and omissions as alleged in this Complaint.

66. By virtue of his position as controlling person, Musk is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Musk's wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the proposed class, prays for judgment against the DEFENDANTS as follows:

a. For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Sodeifi as the representative of the Class and Plaintiff's attorney as Class Counsel to represent the members of the class;

b. For an Order declaring that DEFENDANTS' conduct violates the statutes referenced herein;

c. Requiring that DEFENDANTS pay all costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial to Plaintiff and the Class;

d. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

e.  An award of costs and attorneys' fees; and

f.  Such other or further relief that this Court determines to be appropriate.

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial on all of the claims herein.

Respectfully Submitted

Dated:8/29/2018

By: _____

MARC LAZO

Attorney for Plaintiffs

-14-